IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

RHONDA LOGAN,                          §
                                       §
        Plaintiff,                     §
                                       §
vs.                                    §  Civil Action No. H-04-4178
                                       §
R. JAMES NICHOLSON, SECRETARY          §
OF VETERANS AFFAIRS,                   §
                                       §
        Defendant.                     §

## MEMORANDUM OPINION

Pending before the court[1] is Defendant's Motion for Summary Judgment Concerning Plaintiff's Title VII Claims (Docket Entry No. 45).  Plaintiff filed no response to this motion.  For the reasons discussed below, the motion is **GRANTED**.

### I.  Case Background

Plaintiff, Rhonda Logan ("Logan"), filed this action against her former employer, the Veterans Administration Regional Office, Houston ("VA"), alleging a hostile work environment on the basis of her disability in violation of the Rehabilitation Act, 29 U.S.C. § 791, et seq.[2]  On October 21, 2005, Plaintiff filed a second lawsuit making allegations arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16, for disparate treatment and a hostile work environment on the basis of her sex.  These allegations were consolidated into the present action on March 6,

---

[1]    On May 6, 2005, the parties consented to proceed before the undersigned magistrate judge.  See Docket Entry No. 15.

[2]    These allegations were contained in her administrative charge dated May 21, 2002, administratively numbered 2003-0362-2002102817.

2006.[3]  On May 30, 2006, the court found that Plaintiff's bi-polar condition and post-traumatic stress disorder did not meet the definition of a disability under the Rehabilitation Act and dismissed that claim.[4]  For the sake of clarity, the court repeats some of its factual recitation from the earlier memorandum.

Plaintiff was employed by the VA and was assigned to the Loan Guarantee Unit.  Sometime during 2001, employees in the Loan Guarantee Unit were divided into teams.[5]  Several teams were "employee-managed" teams, and at least one team was a management-directed team.  Plaintiff was assigned to an employee-managed team. Under the latter system of management, the team discussed its performance in weekly meetings with the goal of improving team productivity.[6]  Conflicts arose within Plaintiff's team concerning workloads, work performance, perceived slights, and vacation relief duties.[7]  Additionally, one member of the team, Keith Guillory, was

---

[3]     These allegations were originally filed in H-05-3635 and contained in her administrative charge dated December 4, 2003, administratively numbered 2003-0362-2004100404.

[4]     See Docket Entry No. 36.

[5]     Defendant's Motion for Summary Judgment, Docket Entry No. 16, Ex. 2, "Notice of Right to File a Discrimination Complaint," which attached "Statement of Rhonda Logan, dated May 1, 2002."

[6]     Defendant's Motion for Summary Judgment, Docket Entry No. 16, Ex. 10, "Sworn Statement of Raymond Biagioli," pp. 20-21.

[7]     Exhibits to Plaintiff's Response to Defendant's Motion for Summary Judgment, Docket Entry No. 22, "Hearing Testimony of Rhonda Logan," pp. 25-40.

particularly vocal during these meetings.[8]

On March 18, 2002, Plaintiff sent an interoffice memo to Helen Galer ("Galer"), Loan Administration Officer, requesting to be excused from team meetings for an indefinite period of time. Plaintiff explained that the meetings were too stressful and impacted her service-connected disability, and were "in turn starting to impact [her] work."[9]   Plaintiff did not disclose the nature of her service-connected disability.   Galer referred this matter to her supervisor, Raymond Biagioli ("Biagioli").

On March 20, 2002, Biagioli responded to Plaintiff's March 18, 2002, memo.   Explaining that her attendance at the team meetings was an important part of her job duties, Biagioli denied her request to be excused from the team meetings until her request could be supported by medical documentation.[10]

Instead, on March 22, 2002, Plaintiff sent a memo to the Director of the VA, requesting a service-based disability accommodation.   This request attached a letter from Dr. Penny Chow,

---

[8]      Plaintiff, Rhonda Logan's Complaint and Jury Demand, Docket Entry No. 1, H-05-3635, p. 4.   There, Plaintiff alleged, "Plaintiff had several encounters with a Mr. Guillory.   Mr. Guillory caused fear among all of the employees of the unit.   He was ballistic in his behavior and was difficult to handle.   The Agency failed to take action to curtail his blatant behavior."

[9]      Defendant's Motion for Summary Judgment, Docket Entry No. 16, Ex. 3 "March 11, 2002, memo from Plaintiff."

[10]      Defendant's Motion for Summary Judgment, Docket Entry No. 16, Ex. 4 "March 20, 2002, letter to Plaintiff."

a VA staff psychiatrist.[11]  Dr. Chow did not disclose the nature of Plaintiff's disability, but generally stated that Plaintiff had a disability that had been aggravated by stress at work, specifically, by the team meetings.  Dr. Chow asked that Plaintiff be relieved of her obligation to attend team meetings.[12]

On March 28, 2002, Biagioli temporarily excused Plaintiff from attending team meetings pending a final decision on her request for accommodation.[13]  Plaintiff was required to read minutes of the meetings and Plaintiff's supervisor was to advise Plaintiff of any significant issues discussed at the meetings that might impact Plaintiff's case load.[14]

On April 1, 2002, Plaintiff and Dr. Scherich met with James Hedge ("Hedge"), director of the VA's labor management relations office, to protest Biagioli's request for medical information.[15]  Dr. Scherich expressed her opinion that Plaintiff had a service-connected disability and that no further information was necessary to make a decision on her request for an accommodation.[16]  Hedge

---

[11]   Defendant's Motion for Summary Judgment, Docket Entry No. 16, Ex. 5, "Memo to Director of VA from Plaintiff."

[12]   Id.

[13]   Defendant's Motion for Summary Judgment, Docket Entry No. 16, Ex. 6 "March 28, 2002, letter to Plaintiff."

[14]   Id.

[15]   Defendant's Motion for Summary Judgment, Docket Entry No. 16, Ex. 8, "Sworn Statement of James Hedge," p. 4.

[16]   Id. at p. 11.

disagreed, stating that management needed to know the nature of the disability and what substantial limitation that disability had on a major life activity before it could discuss an accommodation.[17]

According to Plaintiff, the discussion between Hedge and Dr. Scherich became loud and contentious.[18] Hedge averred that he asked for Plaintiff's cooperation in providing Biagioli with the requested information.[19] Plaintiff, believing that Hedge had implied that if she did not sign the medical release, it would affect her job, experienced a panic attack.[20] In his sworn statement to the Equal Employment Opportunity investigator, Hedge confirmed that Plaintiff began crying during this meeting.[21] Eventually, Dr. Scherich and Hedge agreed to a limited release of information to Biagioli.[22] Hedge prepared the release document but Plaintiff did not sign it at that time.[23]

On April 3, 2002, Plaintiff received a letter from Biagioli

---

[17]    Id. at p. 12.

[18]    Exhibits to Plaintiff's Response to Defendant's Motion for Summary Judgment, Docket Entry No. 22, "Testimony of Rhonda Logan," p. 60.

[19]    Defendant's Motion for Summary Judgment, Docket Entry No. 16, Ex. 8, "Sworn Statement of James Hedge," p. 24.

[20]    Exhibits to Plaintiff's Response to Defendant's Motion for Summary Judgment, Docket Entry No. 22, "Testimony of Rhonda Logan," p. 61.

[21]    Defendant's Motion for Summary Judgment, Docket Entry No. 16, Ex. 8, "Sworn Statement of James Hedge," p. 24.

[22]    Id. at p. 15.

[23]    Id.

again requesting medical information.[24]  He asked that she sign the
enclosed release by April 10, 2002.[25]  Plaintiff took the rest of
the week off.

The following week, Plaintiff requested 20.75 hours of
administrative leave[26] for the time she was off work the week
before.[27]  Alternatively, she requested advanced sick leave and
supported that request with a statement from Dr. Chow, who related
that Plaintiff was experiencing stress from her job that was
causing her difficulty in managing her disability.[28]  Plaintiff was
granted 20.75 hours of advanced sick leave.[29]  Biagioli testified
that he only had the authority to grant advanced sick leave, not
administrative leave.[30]

Plaintiff signed the release on April 8, 2002, authorizing

---

[24]    Defendant's Motion for Summary Judgment, Docket Entry No. 16, Ex. 7
"April 3, 2002, letter to Plaintiff."

[25]    Id.

[26]    Administrative leave is an excused absence from work without a charge
to sick or annual leave.  At a hearing held on April 5, 2006, Plaintiff's counsel
explained that his client is no longer pursuing a separate claim of
discrimination based on the grant of advanced sick leave instead of
administrative leave.  Instead, she argues that the denial of administrative
leave is evidence of a disability or gender-based hostile work environment.

[27]    Defendant's Motion for Summary Judgment, Docket Entry No. 16, Ex. 9,
"Memo from Dr. Chow," and Ex. 11, "April 11, 2002, email to Biagioli from
Plaintiff and his response."

[28]    Id.

[29]    Defendant's Motion for Summary Judgment, Docket Entry No. 16, Ex. 11,
"April 11, 2002, email to Biagioli from Plaintiff and response."

[30]    Defendant's Motion for Summary Judgment, Docket Entry No. 16, Ex. 10,
"Sworn Statement of Raymond Biagioli," p. 30; Ex. 17, "Hearing testimony of
Raymond Biagioli," p. 65.

Drs. Chow and Scherich to discuss her medical condition with Biagioli.[31]

On April 19, 2002, Plaintiff filed an informal complaint of discrimination, alleging that she was discriminated against on the basis of her disability when her March 18, 2002, request for an accommodation was denied, when she was charged leave without pay for her absences of March 19-22, 2002, and when Hedge treated her as if she were not performing her job duties during the April 1, 2002, meeting.[32]

On April 30, 2002, Plaintiff received a letter from Biagioli informing her that, as a permanent accommodation, supervisors would play an expanded role in managing the agenda at the team meetings and would be present at the meetings to ensure more professional conduct by all present.[33]   Plaintiff was told to return to her regularly-scheduled team meeting during the week of May 6, 2002.[34]

---

[31]     According to Biagioli and Hedge, Dr. Scherich told Biagioli that Plaintiff did not want him to communicate with Dr. Chow.   Acquiescing to Plaintiff's wishes, Biagioli refrained from calling Dr. Chow for information on Plaintiff's disability.   Plaintiff denied telling Dr. Scherich this and insisted at the EEO hearing that she wanted Biagioli to talk to Dr. Chow.   See Defendant's Motion for Summary Judgment, Docket Entry No. 16, Ex. 10, "Hearing Testimony of Raymond Biagioli," p. 33; Ex. 8, "Hearing Testimony of James Hedge," p. 18; Exhibits to Plaintiff's Response to Defendant's Motion for Summary Judgment, Docket Entry No. 22, "Hearing Testimony of Rhonda Logan," p. 164.   It is undisputed that no medical records documenting Plaintiff's disability were ever provided to Biagioli.

[32]     Defendant's Motion for Summary Judgment, Docket Entry No. 16, Ex. 2, "EEOC documents concerning Plaintiff's complaint of discrimination," p. 1.

[33]     Defendant's Motion for Summary Judgment, Docket Entry No. 16, Ex. 12, "April 30, 2002, letter to Logan."

[34]     Id.

7

On May 23, 2002, Dr. Chow recommended that Plaintiff be granted a medical leave of absence from May 23, 2002, through May 29, 2002, due to stress.[35]  This leave was later extended through May 31, 2002.  Sometime during the summer of 2002, Plaintiff was placed on medical leave for a total of sixty days.[36]  In September 2002, Plaintiff was moved to another team which, according to Plaintiff, did not have hostile team meetings.[37]  Nonetheless, Plaintiff found those meetings stressful.[38]  She remained in the Loan Guarantee Unit until she was granted a disability retirement in September 2003.

On December 4, 2003, Plaintiff filed a second administrative complaint of discrimination, the one presently before the court, alleging a hostile work environment based on her gender from January 2001 through June 2003.[39]  In it she stated,

> Team meetings where (sic) hostile.  Not being accommodated caused hostile environment.  Management allowance of aggression by Keith Guillory.  Not being accommodated for illness when men where (sic). Supervisor comments about my breast size and clothing. Singled out for alledged (sic) improper items on desk.

---

[35]    Defendant's Motion for Summary Judgment, Docket Entry No. 16, Ex. 19, "Memo from Dr. Chow."

[36]    The record is not clear on the actual leave period, but Plaintiff testified about an encounter with a co-worker on July 1, 2002, indicating that she was working up to that date.  Exhibits to Plaintiff's Response to Defendant's Motion for Summary Judgment, Docket Entry No. 22, "Testimony of Rhonda Logan," p. 171.

[37]    Exhibits to Plaintiff's Response to Defendant's Motion for Summary Judgment, Docket Entry No. 22, "Testimony of Rhonda Logan," pp. 114, 154-55.

[38]    Id., pp. 114-15.

[39]    Defendant's Motion for Summary Judgment, Docket Entry No. 45, Ex. 1, "Complaint of Discrimination."

Plaintiff's complaint in H-05-3635 did not add much detail to these allegations in terms of gender discrimination.  For the most part, Plaintiff repeated her attempts to obtain an accommodation for her disability.  With reference to Plaintiff's claim of a hostile work environment on the basis of gender, the complaint alleged that the team meetings were hostile, that management failed to control the team meetings and that the meetings were so "boisterous" that other employees made fun of the team.[40]  Plaintiff also alleged that personal attacks were directed at her in these meetings.

Plaintiff claimed that she was treated less favorably when the Defendant granted administrative leave to other parties, assigned employees to other areas of employment upon their request, made special physical accommodations to employees upon their request, enforced the dress code to humiliate her, and when her supervisor made a comment about her breasts.[41]

Defendant filed the pending motion for summary judgment on Plaintiff's gender discrimination claims.  Plaintiff failed to respond to the motion.

## II.  Summary Judgment Standard

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P.

---

[40]    Plaintiff's Complaint, H-05-3635, Docket Entry No. 1, p. 4.

[41]    Id. at 8.

9

56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986); <u>Brown v.</u>
<u>City of Houston, Tex.</u>, 337 F.3d 539, 540-41 (5th Cir. 2003).  A
material fact is a fact that is identified by applicable substantive
law as critical to the outcome of the suit.  <u>Anderson v. Liberty</u>
<u>Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>Ameristar Jet Charter, Inc.</u>
<u>v. Signal Composites, Inc.</u>, 271 F.3d 624, 626 (5th Cir. 2001).  To
be genuine, the dispute regarding a material fact must be supported
by evidence such that a reasonable jury could resolve the issue in
favor of either party.  <u>Anderson</u>, 477 U.S. at 250; <u>TIG Ins. Co. v.</u>
<u>Sedgwick James of Wash.</u>, 276 F.3d 754, 759 (5th Cir. 2002).

The movant must inform the court of the basis for the summary
judgment motion and must point to relevant excerpts from pleadings,
depositions, answers to interrogatories, admissions, or affidavits
that demonstrate the absence of genuine factual issues.  <u>Celotex</u>
<u>Corp.</u>, 477 U.S. at 323; <u>Topalian v. Ehrman</u>, 954 F.2d 1125, 1131 (5th
Cir. 1992).  If the moving party can show an absence of record
evidence in support of one or more elements of the case for which
the nonmoving party bears the burden, the movant will be entitled
to summary judgment.  <u>Celotex Corp.</u>, 477 U.S. at 322.  In response
to a showing of lack of evidence, the party opposing summary
judgment must go beyond the pleadings and proffer evidence that
establishes each of the challenged elements of the case,
demonstrating that genuine issues of material fact do exist which
must be resolved at trial.  <u>Id.</u> at 324.

When considering the evidence, "[d]oubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party." <u>Evans v. City of Houston</u>, 246 F.3d 344, 348 (5th Cir. 2001); <u>see also</u> <u>Boston Old Colony Ins. Co. v. Tiner Assocs. Inc.</u>, 288 F.3d 222, 227 (5th Cir. 2002).  The court should not "weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence." <u>Honore v. Douglas</u>, 833 F.2d 565, 567 (5th Cir. 1987).

However, the nonmoving party must show more than "some metaphysical doubt as to the material facts." <u>Meinecke v. H & R Block of Houston</u>, 66 F.3d 77, 81 (5th Cir. 1995).  Conclusory allegations, unsubstantiated assertions, improbable inferences, unsupported speculation, or only a scintilla of evidence will not carry this burden. <u>Brown</u>, 337 F.3d at 541; <u>Ramsey v. Henderson</u>, 286 F.3d 264, 269 (5th Cir. 2002).  The court must grant summary judgment if, after an adequate period of discovery, the nonmovant fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp.</u>, 477 U.S. at 322.

### III.  Analysis

Federal employees are protected from discriminatory personnel actions based on "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-16(a).  Disparate treatment claims require proof

11

of intentional discrimination.  _Watson v. Fort Worth Bank & Trust_, 487 U.S. 977, 986 (5th Cir. 1988).   In the absence of direct evidence of discrimination, Title VII claims are analyzed under the familiar burden-shifting approach originally articulated in _McDonnell Douglas Corp. v. Green_, 411 U.S. 792 (1973), and recently modified in _Desert Palace, Inc. v. Costa_, 539 U.S. 90 (2003), and _Rachid v. Jack In The Box, Inc._, 376 F.3d 305 (5th Cir. 2004).

> A.   _Disparate Treatment on the Basis of Gender_

In the context of a disparate treatment adverse employment action claim, a plaintiff must show that (1) she was a member of a protected class; (2) plaintiff was qualified for the position; (3) plaintiff suffered an adverse employment action; and (4) she was treated less favorably than similarly situated employees of a different sex.  _See_ _Okoye v. Univ. of Tex. Houston Health Sci. Ctr._, 245 F.3d 507, 512-13 (5th Cir. 2001).   A plaintiff may trigger a presumption of discrimination by establishing all of the elements of a prima facie case.  _Price v. Fed. Express Corp._, 283 F.3d 715, 720 (5th Cir. 2002).   The burden then shifts to the defendant to proffer legitimate, nondiscriminatory reasons for the employment action.  _Id._

If the defendant meets this burden of production, the presumption dissolves and the burden shifts back to the plaintiff. _Id._; _see also_ _Sandstad v. CB Richard Ellis, Inc._, 309 F.3d 893, 897-98 (5th Cir. 2002)(emphasizing the defendant's burden is one of

production, not persuasion).  According to the Fifth Circuit's recent modification of the analysis, the plaintiff's burden then is to produce some evidence suggesting "either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic (mixed-motives alternative)." Rachid, 376 F.3d at 312 (citations, internal quotation marks, and internal alterations omitted).  If the plaintiff shows illegal discrimination was a motivating factor, the defendant must respond with evidence that the same decision would have been made regardless of discriminatory animus.  Id.

The Fifth Circuit has narrowly construed the adverse employment element of a plaintiff's prima facie case of intentional discrimination, stating that an employment action that "does not affect job duties, compensation, or benefits," is not an adverse employment action.  Pegram v. Honeywell, Inc., 361 F.3d 272, 282 (5th Cir. 2004)(quotation marks and internal citations omitted).  An adverse employment action consists of "ultimate employment decisions such as hiring, granting leave, discharging, promoting, and compensating." Felton v. Polles, 315 F.3d 470, 486 (5th Cir. 2002)(quotation marks and internal citations omitted).  "An employer's action does not rise to the level of an 'adverse employment action' when it fails to have more than a mere tangential

effect on a possible future ultimate employment decision." <u>Mota v.</u>
<u>Univ. of Tex. Houston Health Sci. Ctr.</u>, 261 F.3d 512, 519 (5th Cir.
2001)(quotation marks and internal citations omitted); <u>see also</u>
<u>Hernandez v. Crawford Bldg. Material Co.</u>, 321 F.3d 528, 531–32 & n.2
(5th Cir. 2003)(listing actions that are and are not considered
ultimate employment actions).   The adversity of the employment
action is judged on an objective standard.   <u>Pegram</u>, 361 F.3d at 283.

     Applying these standards, Plaintiff's complaints that the dress
code was disparately enforced against her, that her supervisor made
a comment about her breasts, and that other employees were
accommodated with only a letter from a physician are not employment
actions because of their lack of consequence to a decision to hire,
grant leave, discharge, promote or compensate Plaintiff.   While
these actions were objectionable to Plaintiff, they are not
actionable under Title VII as adverse employment actions.

     The court does not have to decide if Plaintiff's complaint that
Defendant denied her request for administrative leave but granted
administrative leave to other parties[42] was an adverse employment
action under the third prong of the prima facie case requirement
because even if it was, Plaintiff failed to allege any facts that
the other persons allegedly treated more favorably than she were
similarly situated and not members of Plaintiff's protected class

---

[42]     Plaintiff's Complaint, H-05-3635, Docket Entry No. 1, p. 8.

as required in the fourth prong of the prima facie test.[43]   That element requires Plaintiff to show that she was subject to an adverse employment action while "members of the opposite sex were not."  See Green v. Adm'rs of Tulane Educ. Fund, 284 F.3d 642, 657 (5th Cir. 2002).

In light of the foregoing, the court concludes that Plaintiff has not raised a prima facie case of discrimination and her disparate treatment claims on the basis of gender must fail.

B.  Hostile Work Environment

To establish a prima facie case of a hostile work environment based on a protected characteristic, a plaintiff must show: (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment was based upon the protected characteristic; (4) the harassment affected a term, condition, or privilege of employment; and (5) her employer knew or should have known of the harassment and failed to take prompt remedial action. Frank v. Xerox Corp., 347 F.3d 130, 138 (5th Cir. 2003); Celestine v. Petroleos de Venezuella SA, 266 F.3d 343, 353 (5th Cir. 2001).

---

[43]   The court notes that summary judgment evidence related to the earlier motion for summary judgment indicated that the person from whom she requested administrative leave, Raymond Biagioli, did not have the authority to grant anyone administrative leave so he granted Plaintiff advanced sick leave instead. (See Defendant's Motion for Summary Judgment, Docket Entry No. 16, Ex. 10, "Sworn Statement of Raymond Biagioli," p. 30; Ex. 17, "Hearing testimony of Raymond Biagioli," p. 65.)  This averment was not contested by Plaintiff. It is unclear exactly the nature of Plaintiff's complaint because she alleges that after her request for administrative leave was rejected by her supervisor, she "had to meet with Mr. Tom Wagner, Regional Director, to obtain some administrative leave." Plaintiff's Complaint, H-05-3635, Docket Entry No. 1, p. 5.  If Plaintiff ultimately obtained administrative leave, she has not been damaged.

When the harassment in question was allegedly committed by a supervisor with immediate or successively higher authority over the plaintiff, the fifth element need not be established.  Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 765 (1998); Faragher v. City of Boca Raton, 524 U.S. 775, 807 (1998); Celestine, 266 F.3d at 353. In this instance, if the plaintiff meets the first four elements, the employer is subject to vicarious liability for the supervisor's harassing conduct.  Ellerth, 524 U.S. at 765; Faragher, 524 U.S. at 807.

As the Fifth Circuit has noted, Title VII does not establish a civility code in the workplace; an employer runs afoul of Title VII when a work environment becomes hostile or abusive because of a plaintiff's sex and when the harassment is sufficiently severe or pervasive to alter the conditions of employment.  Indest v. Freeman Decorating, Inc., 164 F.3d 258, 263 (5th Cir. 1999)(Title VII not a civility code).  The Supreme Court has warned that evidence of a hostile work environment should not be examined too narrowly, rather, "[T]he objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81-82 (1998)(quotation marks and internal citation omitted).

Plaintiff has failed to allege any fact which would support her argument that she was subjected to a hostile work environment

16

because of her gender.    To the contrary, she alleges in her
complaint that a co-worker, Keith Guillory, "caused fear among all
of the employees in the unit."[44]    The fact that the team meetings
were contentious and stressful to Plaintiff does not raise a fact
issue that she was subjected to a hostile work environment because
of her gender.    Additionally, Plaintiff's allegation that she was
humiliated when a supervisor counseled her on her work attire is not
actionable because it fails to allege that it was done because of
her gender.  As Plaintiff has failed to respond to summary judgment,
she has left the court with little to consider in terms of the
second and third prongs of the prima facie case of a hostile work
environment.

       In order to establish the fourth prong of a prima facie case
of hostile work environment, Plaintiff must produce evidence that
the harassment affected a "term, condition, or privilege" of
employment, showing that the discriminatory words or conduct were
"'sufficiently severe or pervasive, so as to alter the conditions
of employment and create an abusive working environment.'"
Celestine, 266 F.3d at 353 (quoting Watts v. Kroger, 170 F.3d 505,
509-10 (5th Cir. 1999)).

       Here, even crediting Plaintiff's allegation that her supervisor
made an unwelcome comment about Plaintiff's breasts as true, one
offensive comment does not raise a fact issue of a work environment

---

[44]      Plaintiff's Complaint, H-05-3635, Docket Entry No. 1, p. 4.

17

that was sufficiently severe or pervasive so as to alter the conditions of her employment.[45]   In fact, the Supreme Court has noted that Title VII is not a "general civility code," and courts must filter out complaints attacking "the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing."   Faragher, 524 U.S. at 788 (internal quotation omitted).

The court concludes that Plaintiff has failed to raise a prima facie case of a hostile work environment.

### IV.   Conclusion

Based on the foregoing, Defendant's Motion for Summary Judgment is **GRANTED** in all respects.

**SIGNED** in Houston, Texas, this 17th day of April, 2007.

Nancy K. Johnson
United States Magistrate Judge

---

[45]     In Defendant's Motion for Summary Judgment Concerning Plaintiff's Title VII Claims (Docket Entry No. 45), Ex. 2, Plaintiff's supervisor, Doretha Davis, averred that she had several conversations with Plaintiff about dress code violations.   On one occasion in 2003, Plaintiff wore "an extremely revealing dress" with a halter top which prompted a discussion about compliance with Defendant's dress code.   Plaintiff disagreed with Davis's assessment that the dress was revealing and announced that she would wear what she deemed appropriate.   Davis obtained the opinions of two women in the Human Resources Department who both told Plaintiff that the dress was inappropriate for the workplace.   Davis stated that she did not recall making any comment about the size of Plaintiff's breasts in this conversation.   Plaintiff failed to rebut any portion of this summary judgment evidence.

18