IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| RHONDA LOGAN, § | |
| § | |
| Plaintiff, § | |
| § | |
| vs. § | Civil Action No. H-04-4178 |
| § | |
| R. JAMES NICHOLSON, SECRETARY § | |
| OF VETERANS AFFAIRS, § | |
| § | |
| Defendant. § | |

**MEMORANDUM OPINION**

Pending before the court[1] is Defendant's Motion for Summary Judgment Concerning Plaintiff's Title VII Claims (Docket Entry No. 45). Plaintiff has filed her response to the motion. For the reasons discussed below, the motion is **GRANTED**.

**I.  Case Background**

Plaintiff, Rhonda Logan ("Logan"), filed this action against her former employer, the Veterans Administration Regional Office, Houston ("VA"), alleging a hostile work environment on the basis of her disability in violation of the Rehabilitation Act, 29 U.S.C. § 791, et seq.[2] On October 21, 2005, Plaintiff filed a second lawsuit making allegations arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16, for disparate treatment and a hostile work environment on the basis of her sex. These allegations were consolidated into the present action on March 6,

---

[1]   On May 6, 2005, the parties consented to proceed before the undersigned magistrate judge.  See Docket Entry No. 15.

[2]   These allegations were contained in her administrative charge dated May 21, 2002, administratively numbered 2003-0362-2002102817.

2006.³  On May 30, 2006, the court found that Plaintiff's bi-polar condition and post-traumatic stress disorder did not meet the definition of a disability under the Rehabilitation Act and dismissed that claim.⁴  For the sake of clarity, the court repeats some of its factual recitation from the earlier memorandum.

Plaintiff was employed by the VA and was assigned to the Loan Guarantee Unit.  Sometime during 2001, employees in the Loan Guarantee Unit were divided into teams.⁵  Several teams were "employee-managed" teams, and at least one team was a management-directed team.  Plaintiff was assigned to an employee-managed team.  Under the latter system of management, the team discussed its performance in weekly meetings with the goal of improving team productivity.⁶  Conflicts arose within Plaintiff's team concerning workloads, work performance, perceived slights, and vacation relief duties.⁷  Additionally, the team leader, Keith Guillory

---

    ³   These allegations were originally filed in H-05-3635 and contained in her administrative charge dated December 4, 2003, administratively numbered 2003-0362-2004100404.

    ⁴   See Docket Entry No. 36.

    ⁵   Defendant's Motion for Summary Judgment, Docket Entry No. 16, Ex. 2, "Notice of Right to File a Discrimination Complaint," which attached "Statement of Rhonda Logan, dated May 1, 2002."

    ⁶   Defendant's Motion for Summary Judgment, Docket Entry No. 16, Ex. 10, "Sworn Statement of Raymond Biagioli," pp. 20-21.

    ⁷   Exhibits to Plaintiff's Response to Defendant's Motion for Summary Judgment, Docket Entry No. 22, "Hearing Testimony of Rhonda Logan," pp. 25-40.

("Guillory"), was particularly vocal during these meetings.[8]

On March 18, 2002, Plaintiff sent an interoffice memo to Helen Galer ("Galer"), Loan Administration Officer, requesting to be excused from team meetings for an indefinite period of time. Plaintiff explained that the meetings were too stressful and impacted her service-connected disability, and were "in turn starting to impact [her] work."[9] Plaintiff did not disclose the nature of her service-connected disability. Galer referred this matter to her supervisor, Raymond Biagioli ("Biagioli").

On March 20, 2002, Biagioli responded to Plaintiff's March 18, 2002, memo. Explaining that her attendance at the team meetings was an important part of her job duties, Biagioli denied her request to be excused from the team meetings until her request could be supported by medical documentation.[10]

Instead of submitting documentation to Biagioli, on March 22, 2002, Plaintiff sent a memo to the Director of the VA, requesting

---

[8] Plaintiff, Rhonda Logan's Complaint and Jury Demand, Docket Entry No. 1, H-05-3635, p. 4. There, Plaintiff alleged, "Plaintiff had several encounters with a Mr. Guillory. Mr. Guillory caused fear among all of the employees of the unit. He was ballistic in his behavior and was difficult to handle. The Agency failed to take action to curtail his blatant behavior."
Luis Alvarez averred, "I am familiar with Mr. Guillory and his hostility towards the employees. He became a section head where all of the employees had to submit to him monthly reports. Arguments ensued over the manner that he wanted them presented to him. On more than one occasion, Mr. Guillory lashed out at Ms. Logan for no reason at all." Plaintiff's Response to Defendant's Motion for Summary Judgment, Docket Entry No. 58, Ex. 2, Affidavit of Luis Alvarez, p. 2.

[9] Defendant's Motion for Summary Judgment, Docket Entry No. 16, Ex. 3 "March 11, 2002, memo from Plaintiff."

[10] Defendant's Motion for Summary Judgment, Docket Entry No. 16, Ex. 4 "March 20, 2002, letter to Plaintiff."

a service-based disability accommodation.  This request attached a letter from Dr. Penny Chow, a VA staff psychiatrist.[11]  Dr. Chow did not disclose the nature of Plaintiff's disability, but generally stated that Plaintiff had a disability that had been aggravated by stress at work, specifically, by the team meetings.  Dr. Chow asked that Plaintiff be relieved of her obligation to attend team meetings.[12]

On March 28, 2002, Biagioli temporarily excused Plaintiff from attending team meetings pending a final decision on her request for accommodation.[13]  Plaintiff was required to read minutes of the meetings and Plaintiff's supervisor was to advise Plaintiff of any significant issues discussed at the meetings that might impact Plaintiff's case load.[14]

On April 1, 2002, Plaintiff and Dr. Scherich, a VA Vocational Rehabilitation Counselor and Employee Assistance Program Officer, met with James Hedge ("Hedge"), director of the VA's labor management relations office, to protest Biagioli's request for medical information.[15]  Dr. Scherich expressed her opinion that

---

[11]   Defendant's Motion for Summary Judgment, Docket Entry No. 16, Ex. 5, "Memo to Director of VA from Plaintiff."

[12]   Id.

[13]   Defendant's Motion for Summary Judgment, Docket Entry No. 16, Ex. 6 "March 28, 2002, letter to Plaintiff."

[14]   Id.

[15]   Defendant's Motion for Summary Judgment, Docket Entry No. 16, Ex. 8, "Sworn Statement of James Hedge," p. 4.

4

Plaintiff had a service-connected disability and that no further information was necessary to make a decision on her request for an accommodation.[16] Hedge disagreed, stating that management needed to know the nature of the disability and what substantial limitation that disability had on a major life activity before it could discuss an accommodation.[17]

According to Plaintiff, the discussion between Hedge and Dr. Scherich became loud and contentious.[18] Hedge averred that he asked for Plaintiff's cooperation in providing Biagioli with the requested information.[19] Plaintiff, believing that Hedge had implied that if she did not sign the medical release, it would affect her job, experienced a panic attack.[20] In his sworn statement to the Equal Employment Opportunity investigator, Hedge confirmed that Plaintiff began crying during this meeting.[21] Eventually, Dr. Scherich and Hedge agreed to a limited release of information to Biagioli.[22] Hedge prepared the release document but

---

[16]   Id. at p. 11.

[17]   Id. at p. 12.

[18]   Exhibits to Plaintiff's Response to Defendant's Motion for Summary Judgment, Docket Entry No. 22, "Testimony of Rhonda Logan," p. 60.

[19]   Defendant's Motion for Summary Judgment, Docket Entry No. 16, Ex. 8, "Sworn Statement of James Hedge," p. 24.

[20]   Exhibits to Plaintiff's Response to Defendant's Motion for Summary Judgment, Docket Entry No. 22, "Testimony of Rhonda Logan," p. 61.

[21]   Defendant's Motion for Summary Judgment, Docket Entry No. 16, Ex. 8, "Sworn Statement of James Hedge," p. 24.

[22]   Id. at p. 15.

Plaintiff did not sign it at that time.[23]

On April 3, 2002, Plaintiff received a letter from Biagioli again requesting medical information.[24] He asked that she sign the enclosed release by April 10, 2002.[25] Plaintiff took the rest of the week off.

The following week, Plaintiff requested 20.75 hours of administrative leave[26] for the time she was off work the week before.[27] Alternatively, she requested advanced sick leave and supported that request with a statement from Dr. Chow, who related that Plaintiff was experiencing stress from her job that was causing her difficulty in managing her disability.[28] Plaintiff was granted 20.75 hours of advanced sick leave.[29] Biagioli testified that he only had the authority to grant advanced sick leave, not

---

[23] Id.

[24] Defendant's Motion for Summary Judgment, Docket Entry No. 16, Ex. 7 "April 3, 2002, letter to Plaintiff."

[25] Id.

[26] Administrative leave is an excused absence from work without a charge to sick or annual leave. At a hearing held on April 5, 2006, Plaintiff's counsel explained that his client is no longer pursuing a separate claim of discrimination based on the grant of advanced sick leave instead of administrative leave. Instead, Plaintiff argues that the denial of administrative leave is evidence of a disability or gender-based hostile work environment.

[27] Defendant's Motion for Summary Judgment, Docket Entry No. 16, Ex. 9, "Memo from Dr. Chow," and Ex. 11, "April 11, 2002, email to Biagioli from Plaintiff and his response."

[28] Id.

[29] Defendant's Motion for Summary Judgment, Docket Entry No. 16, Ex. 11, "April 11, 2002, email to Biagioli from Plaintiff and response."

administrative leave.[30]

Plaintiff signed the release on April 8, 2002, authorizing Drs. Chow and Scherich to discuss her medical condition with Biagioli.[31]

On April 19, 2002, Plaintiff filed an informal complaint of discrimination, alleging that she was discriminated against on the basis of her disability when her March 18, 2002, request for an accommodation was denied, when she was charged leave without pay for her absences of March 19-22, 2002, and when Hedge treated her as if she were not performing her job duties during the April 1, 2002, meeting.[32]

On April 30, 2002, Plaintiff received a letter from Biagioli informing her that, as a permanent accommodation, supervisors would play an expanded role in managing the agenda at the team meetings and would be present at the meetings to ensure more professional

---

[30] Defendant's Motion for Summary Judgment, Docket Entry No. 16, Ex. 10, "Sworn Statement of Raymond Biagioli," p. 30; Ex. 17, "Hearing testimony of Raymond Biagioli," p. 65.

[31] According to Biagioli and Hedge, Dr. Scherich told Biagioli that Plaintiff did not want him to communicate with Dr. Chow. Acquiescing to Plaintiff's wishes, Biagioli refrained from calling Dr. Chow for information on Plaintiff's disability. Plaintiff denied telling Dr. Scherich this and insisted at the EEO hearing that she wanted Biagioli to talk to Dr. Chow. See Defendant's Motion for Summary Judgment, Docket Entry No. 16, Ex. 10, "Hearing Testimony of Raymond Biagioli," p. 33; Ex. 8, "Hearing Testimony of James Hedge," p. 18; Exhibits to Plaintiff's Response to Defendant's Motion for Summary Judgment, Docket Entry No. 22, "Hearing Testimony of Rhonda Logan," p. 164. It is undisputed that no medical records documenting Plaintiff's disability were ever provided to Biagioli.

[32] Defendant's Motion for Summary Judgment, Docket Entry No. 16, Ex. 2, "EEOC documents concerning Plaintiff's complaint of discrimination," p. 1.

conduct by all present.[33] Plaintiff was told to return to her regularly-scheduled team meeting during the week of May 6, 2002.[34]

On May 23, 2002, Dr. Chow recommended that Plaintiff be granted a medical leave of absence from May 23, 2002, through May 29, 2002, due to stress.[35] This leave was later extended through May 31, 2002. Sometime during the summer of 2002, Plaintiff was placed on medical leave for a total of sixty days.[36] In September 2002, Plaintiff was moved to another team which, according to Plaintiff, did not have hostile team meetings.[37] Nonetheless, Plaintiff found those meetings stressful.[38] She remained in the Loan Guarantee Unit until she was granted a disability retirement in September 2003.

On December 4, 2003, Plaintiff filed a second administrative complaint of discrimination, the one presently before the court, alleging a hostile work environment based on her gender from January

---

[33] Defendant's Motion for Summary Judgment, Docket Entry No. 16, Ex. 12, "April 30, 2002, letter to Logan."

[34] Id.

[35] Defendant's Motion for Summary Judgment, Docket Entry No. 16, Ex. 19, "Memo from Dr. Chow."

[36] The record is not clear on the actual leave period, but Plaintiff testified about an encounter with a co-worker on July 1, 2002, indicating that she was working up to that date. Exhibits to Plaintiff's Response to Defendant's Motion for Summary Judgment, Docket Entry No. 22, "Testimony of Rhonda Logan," p. 171.

[37] Exhibits to Plaintiff's Response to Defendant's Motion for Summary Judgment, Docket Entry No. 22, "Testimony of Rhonda Logan," pp. 114, 154-55.

[38] Id., pp. 114-15.

2001 through June 2003.[39]  In it she stated,

> Team meetings where (sic) hostile. Not being accommodated caused hostile environment. Management allowance of aggression by Keith Guillory. Not being accommodated for illness when men where (sic). Supervisor comments about my breast size and clothing. Singled out for alledged [sic] improper items on desk.

Plaintiff's complaint in H-05-3635 did not add much detail to these allegations in terms of gender discrimination. For the most part, Plaintiff repeated her attempts to obtain an accommodation for her disability. With reference to Plaintiff's claim of a hostile work environment on the basis of gender, the complaint alleged that the team meetings were hostile, that management failed to control the team meetings and that the meetings were so "boisterous" that other employees made fun of the team.[40] Plaintiff also alleged that personal attacks were directed at her in these meetings.

Plaintiff claimed that she was treated less favorably when the Defendant granted administrative leave to other parties, assigned employees to other areas of employment upon their request, made special physical accommodations to employees upon their request, enforced the dress code to humiliate her, and when her supervisor made a comment about her breasts.[41]

---

[39] Defendant's Motion for Summary Judgment, Docket Entry No. 45, Ex. 1, "Complaint of Discrimination."

[40] Plaintiff's Complaint, H-05-3635, Docket Entry No. 1, p. 4.

[41] Id. at 8. In Plaintiff's Response to Defendant's Motion for Summary Judgment, Docket Entry No. 58, Ex. 1, Affidavit of Rhonda Logan, Plaintiff further explains the dress code issue:

Defendant filed the pending motion for summary judgment on Plaintiff's gender discrimination claims. Plaintiff responded to the motion and attached affidavits in support of her opposition to summary judgment.

## II. Summary Judgment Standard

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Brown v. City of Houston, Tex., 337 F.3d 539, 540-41 (5th Cir. 2003). A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ameristar Jet Charter, Inc. v. Signal Composites, Inc., 271 F.3d 624, 626 (5th Cir. 2001). To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party. Anderson, 477 U.S. at 250; TIG Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002).

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits

---

> I was wearing a dress that showed my shoulders. I was told by Dorothea Davis "your breast [sic] are to [sic] big for that dress." I agree to the fact that the dress violated the dress code of showing my shoulders. I felt the comment about my breast was very inappropriate.

that demonstrate the absence of genuine factual issues. <u>Celotex Corp.</u>, 477 U.S. at 323; <u>Topalian v. Ehrman</u>, 954 F.2d 1125, 1131 (5th Cir. 1992). If the moving party can show an absence of record evidence in support of one or more elements of the case for which the nonmoving party bears the burden, the movant will be entitled to summary judgment. <u>Celotex Corp.</u>, 477 U.S. at 322. In response to a showing of lack of evidence, the party opposing summary judgment must go beyond the pleadings and proffer evidence that establishes each of the challenged elements of the case, demonstrating that genuine issues of material fact do exist which must be resolved at trial. <u>Id.</u> at 324.

When considering the evidence, "[d]oubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party." <u>Evans v. City of Houston</u>, 246 F.3d 344, 348 (5th Cir. 2001); <u>see also</u> <u>Boston Old Colony Ins. Co. v. Tiner Assocs. Inc.</u>, 288 F.3d 222, 227 (5th Cir. 2002). The court should not "weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence." <u>Honore v. Douglas</u>, 833 F.2d 565, 567 (5th Cir. 1987).

However, the nonmoving party must show more than "some metaphysical doubt as to the material facts." <u>Meinecke v. H & R Block of Houston</u>, 66 F.3d 77, 81 (5th Cir. 1995). Conclusory allegations, unsubstantiated assertions, improbable inferences, unsupported speculation, or only a scintilla of evidence will not

carry this burden.  <u>Brown</u>, 337 F.3d at 541; <u>Ramsey v. Henderson</u>, 286 F.3d 264, 269 (5th Cir. 2002).  The court must grant summary judgment if, after an adequate period of discovery, the nonmovant fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  <u>Celotex Corp.</u>, 477 U.S. at 322.

In the present case, the parties have had ample time within which to conduct discovery.  <u>See</u> Scheduling Conference Minute Entry, Docket Entry No. 30, and Scheduling Order, Docket Entry No. 31, which set post-consolidation deadlines after discussion with counsel of record.

### III.  Analysis

Federal employees are protected from discriminatory personnel actions based on "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-16(a).  Disparate treatment claims require proof of intentional discrimination.  <u>Watson v. Fort Worth Bank & Trust</u>, 487 U.S. 977, 986 (5th Cir. 1988).  In the absence of direct evidence of discrimination, Title VII claims are analyzed under the familiar burden-shifting approach originally articulated in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973), and recently modified in <u>Desert Palace, Inc. v. Costa</u>, 539 U.S. 90 (2003), and <u>Rachid v. Jack In The Box, Inc.</u>, 376 F.3d 305 (5th Cir. 2004).

**A.  <u>Disparate Treatment on the Basis of Gender</u>**

In the context of a disparate treatment adverse employment action claim, a plaintiff must show that (1) she was a member of a protected class; (2) plaintiff was qualified for the position; (3) plaintiff suffered an adverse employment action; and (4) she was treated less favorably than similarly situated employees of a different sex.  See Okoye v. Univ. of Tex. Houston Health Sci. Ctr., 245 F.3d 507, 512-13 (5th Cir. 2001).  A plaintiff may trigger a presumption of discrimination by establishing all of the elements of a prima facie case.  Price v. Fed. Express Corp., 283 F.3d 715, 720 (5th Cir. 2002).  The burden then shifts to the defendant to proffer legitimate, nondiscriminatory reasons for the employment action.  Id.

If the defendant meets this burden of production, the presumption dissolves and the burden shifts back to the plaintiff. Id.; see also Sandstad v. CB Richard Ellis, Inc., 309 F.3d 893, 897-98 (5th Cir. 2002)(emphasizing the defendant's burden is one of production, not persuasion).  According to the Fifth Circuit's recent modification of the analysis, the plaintiff's burden then is to produce some evidence suggesting "either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic (mixed-motives alternative)."  Rachid, 376 F.3d at 312 (citations,

13

internal quotation marks, and internal alterations omitted). If the plaintiff shows illegal discrimination was a motivating factor, the defendant must respond with evidence that the same decision would have been made regardless of discriminatory animus. Id.

The Fifth Circuit has narrowly construed the adverse employment element of a plaintiff's prima facie case of intentional discrimination, stating that an employment action that "does not affect job duties, compensation, or benefits," is not an adverse employment action. Pegram v. Honeywell, Inc., 361 F.3d 272, 282 (5th Cir. 2004)(quotation marks and internal citations omitted). An adverse employment action consists of "ultimate employment decisions such as hiring, granting leave, discharging, promoting, and compensating." Felton v. Polles, 315 F.3d 470, 486 (5th Cir. 2002)(quotation marks and internal citations omitted). "An employer's action does not rise to the level of an 'adverse employment action' when it fails to have more than a mere tangential effect on a possible future ultimate employment decision." Mota v. Univ. of Tex. Houston Health Sci. Ctr., 261 F.3d 512, 519 (5th Cir. 2001)(quotation marks and internal citations omitted); see also Hernandez v. Crawford Bldg. Material Co., 321 F.3d 528, 531-32 & n.2 (5th Cir. 2003)(listing actions that are and are not considered ultimate employment actions). The adversity of the employment action is judged on an objective standard. Pegram, 361 F.3d at 283.

Applying these standards, Plaintiff's complaints that the dress

code was disparately enforced against her, that her supervisor made a comment about her breasts, that she was told to remove toys and photos from her desk, and that other employees were accommodated with only a letter from a physician are not employment actions because of their lack of consequence to a decision to hire, grant leave, discharge, promote or compensate Plaintiff.

Additionally, Biagioli's granting Plaintiff's alternative request of 20.5 hours of advanced sick leave rather than 20.5 hours of administrative leave as she would have preferred is not an adverse employment action. McCoy v. City of Shreveport, ___ F.3d ___, 2007 WL 1991042, at *4 (5th Cir. July 11, 2007)(finding that the court properly held that placing plaintiff on paid leave, whether administrative or sick, was not an adverse employment action in the context of a discrimination claim). While these actions were objectionable to Plaintiff, they are not actionable under Title VII as adverse employment actions. In light of this finding, the court need not address Plaintiff's arguments that other employees were treated more favorably than she because of her sex.

### B. Hostile Work Environment

To establish a prima facie case of a hostile work environment based on a protected characteristic, a plaintiff must show: (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment was based upon the protected characteristic; (4) the harassment affected a term, condition, or

15

privilege of employment; and (5) her employer knew or should have known of the harassment and failed to take prompt remedial action. Frank v. Xerox Corp., 347 F.3d 130, 138 (5th Cir. 2003); Celestine v. Petroleos de Venezuella SA, 266 F.3d 343, 353 (5th Cir. 2001).

When the harassment in question was allegedly committed by a supervisor with immediate or successively higher authority over the plaintiff, the fifth element need not be established. Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 765 (1998); Faragher v. City of Boca Raton, 524 U.S. 775, 807 (1998); Celestine, 266 F.3d at 353. In this instance, if the plaintiff meets the first four elements, the employer is subject to vicarious liability for the supervisor's harassing conduct. Ellerth, 524 U.S. at 765; Faragher, 524 U.S. at 807.

As the Fifth Circuit has noted, Title VII does not establish a civility code in the workplace; an employer runs afoul of Title VII when a work environment becomes hostile or abusive because of a plaintiff's sex and when the harassment is sufficiently severe or pervasive to alter the conditions of employment. Indest v. Freeman Decorating, Inc., 164 F.3d 258, 263 (5th Cir. 1999)(Title VII not a civility code). The Supreme Court has warned that evidence of a hostile work environment should not be examined too narrowly, rather, "[T]he objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." Oncale v. Sundowner

Offshore Servs., Inc., 523 U.S. 75, 81-82 (1998)(quotation marks and internal citation omitted).

Plaintiff has failed to allege any fact which would support her argument that she was subjected to a hostile work environment because of her sex.  To the contrary, she alleged in her complaint that a co-worker, Guillory, "caused fear among all of the employees in the unit."[42]  In her affidavit, Plaintiff also complained that Guillory "started yelling at me and Mack Koonce, a fellow employee, about work we had turned in. [Guillory] then began calling me names."[43]  Plaintiff averred that at one staff meeting, Guillory became angry and complained to a supervisor that management was allowing only Plaintiff to speak at the meeting.[44]  Plaintiff complains that management did not stop his tirade on that occasion and did not take disciplinary action against Guillory until he threatened a member of management and was sent home.[45]  Even considering the summary judgment evidence in the light most favorable to Plaintiff, the existence of contentious and stressful team meetings does not raise a fact issue that Plaintiff was subjected to a hostile work environment because of her sex.

---

[42]  Plaintiff's Complaint, H-05-3635, Docket Entry No. 1, p. 4.

[43]  Plaintiff's Response to Defendant's Motion for Summary Judgment, Docket Entry No. 58, Ex. 1, Affidavit of Rhonda Logan.

[44]  Id.

[45]  According to Plaintiff, Guillory was shot later that evening by police after he threatened them with a knife. See Plaintiff's Response to Defendant's Motion for Summary Judgment, Docket Entry No. 58, Ex. 1, Affidavit of Rhonda Logan, p. 2.

Plaintiff must do more than allege a hostile work environment; she must bring forward facts from which a jury could conclude that she was subjected to a hostile work environment because of her sex. All Plaintiff has done is to show that Guillory made team meetings stressful for everyone.

In order to establish the fourth prong of a prima facie case of hostile work environment, Plaintiff must produce evidence that the harassment affected a "term, condition, or privilege" of employment, showing that the discriminatory words or conduct were "'sufficiently severe or pervasive, so as to alter the conditions of employment and create an abusive working environment.'" Celestine, 266 F.3d at 353 (quoting Watts v. Kroger, 170 F.3d 505, 509-10 (5th Cir. 1999)).

Here, even crediting Plaintiff's allegations that team meetings were very contentious and that her supervisor made an unwelcome comment about Plaintiff's breasts as true, Plaintiff has failed to raise a fact issue of conduct that was sufficiently severe or pervasive so as to alter the conditions of her employment. The Supreme Court has cautioned that courts must filter out complaints attacking "the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." Faragher, 524 U.S. at 788 (internal quotation omitted).  Plaintiff's complaints do not go beyond ordinary workplace irritations.

The court concludes that Plaintiff has failed to raise a prima facie case of a hostile work environment based on her sex.

## IV. Conclusion

Based on the foregoing, Defendant's Motion for Summary Judgment is **GRANTED** in all respects.

**SIGNED** in Houston, Texas, this 17th day of July, 2007.

Nancy K. Johnson
United States Magistrate Judge